In the Interest of J.L.L., A
Minor Child,

L.M.L., Natural Mother, Appellant.

No. 86–1248.

Supreme Court of Iowa.

Oct. 21, 1987.

Douglas L. Hein, Spencer, for appellant.

Randal L. Nuebel, Spencer, for appellee paternal uncle.

Bradley Howe of Sackett, Sackett, Hemphill & Howe, Spencer, guardian ad litem for the child.

Considered by HARRIS, P.J., LARSON, SCHULTZ, CARTER and LAVORATO, JJ.

HARRIS, Justice.

Iowa has alternative statutory proceedings for terminating parent-child relationships. The more traditional adversarial

system provided in Iowa Code chapter 232[1] calls for the furnishing of an attorney at public expense when requested by indigent parties. Another procedure, omitting the express necessity of counsel at public expense, is provided in Iowa Code chapter 600A. Under section 600A.8 the termination can be instituted upon the voluntary consent of the parents.

This matter was instituted as a voluntary termination proceeding under chapter 600A. The question is whether it was changed into an involuntary proceeding. We think it was not.

The child was born in October 1983. On April 17, 1986, her paternal uncle[2] filed a petition under Iowa Code chapter 600A, seeking termination of the parental rights of the child's mother and father. In January 1986 both natural parents had signed papers which released the child to the uncle's custody for the purpose of permitting an adoption.

Hearing on the termination proceeding was set for May 21, 1986. A guardian ad litem was appointed to represent the child and notice of the hearing was served on the natural parents. On July 8th the hearing was rescheduled for July 23, 1986. Notice of the change was mailed to the parents.

On July 19th the natural mother telephoned the juvenile referee and asked for a continuance until the first of September. The mother told the referee that she and her husband were unable to obtain an attorney to represent them in the matter. No claim of indigency was made; the referee was not told that finances were an impediment to securing counsel. The petitioner uncle and his wife had already arrived for the hearing from Odessa, Texas. Because of this, and in view of the fact that the natural parents had known of the scheduled hearing since May without complaining, a continuance was not granted.

On July 21st the parents followed their oral request for a continuance with a typewritten one. The hearing was nevertheless held on July 23rd. On July 24, 1986, the juvenile court referee filed his findings of fact and order terminating the parent-child relationship.

The referee later filed a supplemental order in which he stated he advised the parties present at the hearing on July 23rd of their right to have the hearing recorded pursuant to Iowa Code section 232.94. The parties present waived the requirement that stenographic notes or electronic or mechanical recordings be taken of the hearing. The natural mother was not present; the natural father was.

The natural mother appealed. The court of appeals affirmed the juvenile court's order of termination. The matter is before us on further review.

I. In *In re Jacobs*, 309 N.W.2d 481 (Iowa 1981), the issue was whether a natural parent in a chapter 600A proceeding is entitled to court-appointed counsel under the due process and equal protection clauses of the federal and state constitutions. We said:

> [a]lthough an indigent in certain circumstances may have a constitutional right to court-appointed counsel in a proceeding to sever parental rights, [citing *Lassiter v. Department of Social Services of Durham County, North Carolina*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)] we do not reach that issue unless this [parent] is indigent.

309 N.W.2d at 483.

Further, the parent must carry the burden to establish the indigency allegations of any motion. *Id.* Because the father in *Jacobs* had not carried his burden of establishing indigency we did not reach the constitutional question.

We now conclude that it was appropriate for the legislature to distinguish between voluntary and involuntary terminations and to provide for counsel at public expense only where the proceedings are involuntary. In *Lassiter*, the court declined to declare an absolute right to appointed counsel in all termination proceedings.

---

1. All references are to the 1985 code.

2. No issue is raised concerning the propriety of releasing the child for adoption to a private individual. *But see* Iowa Code § 600A.4(2).

Rather it chose to allow courts to decide in individual cases whether due process requires appointment of counsel. 452 U.S. at 30, 101 S.Ct. at 2161–62, 68 L.Ed.2d at 651–52. Our legislative response, providing counsel in all *involuntary* terminations, is ample to meet the due process requirement.

It was reasonable for the legislature to suppose that voluntary terminations, which are by nature uncontested, do not require counsel as do adversarial proceedings. It was reasonable for the legislature to withhold providing counsel at public expense to indigent parties in voluntary terminations.

The mother here does not think her right to appointed counsel is precluded by the origin of this as a voluntary proceeding. She does not deny that, by consenting to it, she participated in its initiation as a voluntary proceeding. She contends the proceeding was transformed from a voluntary to an involuntary one. She thinks the referee was sufficiently notified of the change. The request for continuance, especially her stated reason (inability to obtain counsel), was in her view ample to alert the referee of the fact that she no longer consented to the termination.[3]

For a combination of reasons we feel obliged to reject the mother's contention. Most important is the distinctive nature of a voluntary proceeding. A voluntary proceeding is designed around the parents' signatures on voluntary consents. With such a consent, in the absence of fraud or duress (not alleged here), parties can be spared the trouble and considerable expense which would be appropriate and necessary if the termination were to be disputed.

There is advantage to the public in providing for a more simple and less expensive proceeding in uncontested terminations. Much, perhaps most, of that advantage would be lost if, in order to make it valid, a trial court were required to supply *Miranda*-type warnings at various junctures in the proceedings. Such a burden, with the attendant question of whether a judge

fairly discharged it, would likely convert the matter into an adversarial one, not unlike a chapter 232 proceeding.

The record here is conspicuous because of two things not included. First, the referee was not told the mother wished to withdraw her consent. On appeal the mother argues that her report of an unsuccessful search for an attorney could signify nothing but indigency and a wish to cancel her consent to the termination. Experience teaches other possibilities. It also teaches that all possibilities cannot be imagined. A demand for money is not unknown in such matters, either as a price for continued consent or in order to avoid delay. A natural parent might consent to the termination but retain an interest in placement for adoption. This is a real possibility, especially where the mother knows a child is to be adopted by its paternal relatives.

Also absent from the record is any claim of indigency prior to the hearing. Lack of funds does often play a prominent role in people's difficulties in obtaining legal services. But other reasons are not unknown. Nothing was said to the referee to alert him that the mother lacked funds to obtain counsel.

The consent given in this case was unequivocal. The referee was entitled to treat the matter as a voluntary proceeding. The mother's contention to the contrary is without merit.

■■■ II. In a separate assignment of error the mother contends the juvenile court abused its discretion when it denied her request for a continuance.

The grant or denial of a motion for continuance is in the discretion of the trial court and will be interfered with on appeal only when there has been a clear abuse of that discretion, and injustice has been done to the party seeking continuance. *State v. Kyle*, 271 N.W.2d 689, 691 (Iowa 1978). For us to find an abuse of discretion, it must be shown by the complaining party that the trial court's action was unreasonable under the attendant circumstances. *State v. Cott*, 283 N.W.2d 324, 329 (Iowa 1979).

---

**3.** Section 600A.4(4) prescribes a carefully structured procedure for requesting revocation of parental releases. The procedure was not followed in this case.

The denial here is defended on two grounds previously mentioned. The adoptive parents had driven to Iowa from Texas in the good faith expectation that the hearing would be held. The natural mother had been aware of the hearing since May and had ample time to obtain counsel.

Under the circumstances the denial was not unreasonable. We find no abuse.

III. The mother's final assignment challenges the waiver of a record or transcript of the hearing.

Iowa Code section 600A.7(1) states that hearing on termination of parental rights shall be conducted in accordance with the provisions of sections 232.91 to 232.96. Section 232.94 says "[s]tenographic notes or electronic or mechanical recordings shall be taken of all court hearings held pursuant to this division unless waived by the parties." Section 232.91 provides that any hearings or proceedings shall not take place without the presence of the child's parent, guardian, custodian or guardian ad litem in accordance with and subject to section 232.38. Finally, section 232.38(1) states:

> Any hearings or proceedings under this division subsequent to the filing of a petition shall not take place without the presence of one or both of the child's parents, guardian or custodian *except* that a hearing or proceeding may take place without such presence if the parent, guardian or custodian fails to appear after reasonable notification....

(Emphasis added.)

Any waiver of the right to have a record of the proceedings must be knowing and voluntary. *In re Loeffelholz,* 162 N.W.2d 415, 426 (1968). We have also said an appeal without the transcript of the evidence upon which the appeal is based is, in effect, no right of appeal at all. *In re Chambers,* 261 Iowa 31, 36, 152 N.W.2d 818, 821 (1967). But it is far from clear that the legislature intended to require a recording or transcript whenever a parent chooses not to appear.

If we were to assume error in the failure to record here it is difficult to see how this mother was prejudiced. The referee's extensive findings of fact are not in issue. The natural father, who was acting with her at the time, did attend. The waiver was effective as to him. The natural mother was not present and made no showing which could be the subject of a recording or transcription. The mother's right to attend the hearing carried with it the right to be asked, as her husband was, whether she wished for a transcript. Her decision not to attend was also a decision not to request a recording or transcription.

We find no prejudice in the claimed error.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.