**In the Interest of S.A.J.B., Minor Child,**

**J.E.B., Father, Appellee,**

v.

**K.C., Mother, Appellant.**

No. 03–1364.

Supreme Court of Iowa.

May 12, 2004.

Derek E. Johnson, Iowa City, for appellant.

Richard E. Boresi of King, Smith & Boresi, Cedar Rapids, for appellee.

Barbara Connolly, Cedar Rapids, for minor child.

STREIT, Justice.

An indigent mother wants a court-appointed attorney to help fight the termination of her parental rights. The father of the child initiated the termination so his new wife could adopt. The district court refused to appoint the mother an attorney at public expense.

The sole question in this appeal is whether an indigent parent has a right to have an attorney appointed, at public expense, to help defend against an involuntary termination of parental rights brought under Iowa Code chapter 600A. We hold the equal protection clause of the Iowa Constitution guarantees this right.

## I. Facts and Prior Proceedings

James and Krista are the biological parents of Shi Anne, a three-year old. James and Krista were never married. Shi Anne lives with James and his wife, Cynthia.

In July 2003, James asked the district court to terminate Krista's parental rights. James alleged Krista had abandoned Shi Anne. In his petition—filed pursuant to Iowa Code chapter 232 (2003)—James also

indicated Cynthia wanted to adopt his daughter.

The next month, an Iowa Legal Aid attorney appeared on Krista's behalf for the limited purpose of helping her obtain court-appointed counsel. Krista pointed out chapter 232, under which the petition was brought, guaranteed her counsel at public expense. *See* Iowa Code § 232.113(1) ("If the parent desires but is financially unable to employ counsel, the court shall appoint counsel."). Anticipating James might move to amend his petition to state a claim under chapter 600A, Krista argued the equal protection and due process clauses of the state and federal constitutions would still guarantee her counsel at public expense.

As anticipated, James amended his petition to chapter 600A. He did not resist Krista's request for counsel.

The district court denied Krista's request. The court found Krista was indigent, but ruled there was no legal authority in chapter 600A to authorize appointment of counsel at public expense.

The case is now before us on interlocutory appeal. James has not filed a brief in this matter.

## II. Standard of Review

Appellate review of constitutional claims is de novo. *In re C.M.*, 652 N.W.2d 204, 209 (Iowa 2002).

## III. Merits

Krista maintains the equal protection and due process clauses of the federal and state constitutions required the court to appoint counsel at public expense. *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. I, §§ 6, 9. We were presented with these same arguments over twenty years ago. *See In re Jacobs*, 309 N.W.2d 481, 482–83 (Iowa 1981). In *Jacobs*, however, the parent requesting counsel at public expense did not establish his indigency, and so we did not reach the merits. *Id.* at 484. In the case at bar, however, the district court expressly found Krista indigent, and her financial status is not challenged on appeal. We may now squarely address the merits of her arguments.

Krista's equal protection argument is two-fold: she maintains the district court's failure to appoint counsel (1) unjustifiably discriminates against indigent parents facing involuntary termination of their parental rights in chapter 600A proceedings, in favor of those in chapter 232 proceedings, and (2) denies indigent parents in 600A terminations the same access to courts enjoyed by those who can afford private counsel. Krista also asserts due process requires she receive counsel at public expense. Because we find Krista's first equal protection argument has merit, we do not address her other claims.

### Equal Protection

"Iowa has alternative statutory proceedings for terminating parent-child relationships." *In re J.L.L.*, 414 N.W.2d 133, 133 (Iowa 1987). Under Iowa Code chapter 232, several parties, including the county attorney and the department of human services, may petition the district court to terminate a parent-child relationship. Iowa Code § 232.111(1). Once filed, generally only the county attorney may present evidence in support of the petition. *Id.* § 232.114(1). *But see id.* § 232.114(2) (attorney general may be substituted in limited circumstances). This procedure, which we shall refer to as a "232 termination," "calls for the furnishing of an attorney at public expense when requested by indigent parties." *J.L.L.*, 414 N.W.2d at 134; Iowa Code § 232.113(1).

■ Another termination procedure, utilized in adoption proceedings, is contained in Iowa Code chapter 600A. Pursuant to chapter 600A, "a parent or prospective parent" may petition a juvenile court to terminate parental rights. Iowa Code § 600A.5(1); *see, e.g., In re R.K.B.,* 572 N.W.2d 600, 601 (Iowa 1998). This procedure, which we shall characterize as a "600A termination," is prosecuted by the private party filing the petition, not the county attorney. Chapter 600A "omit[s] the express necessity of counsel at public expense...." *J.L.L.,* 414 N.W.2d at 134.

As previously indicated, Krista's first equal protection argument alleges the foregoing legislative framework unjustifiably discriminates against indigent parents who must defend against involuntary 600A terminations, because there is no provision in Iowa Code chapter 600A for court-appointed counsel. Krista points out similarly situated parents in 232 terminations are afforded counsel at public expense.

■ Because the question before us remains open under the federal constitution, we first focus upon Krista's state constitutional claim. *See* Chester James Antieau & William J. Rich, *Modern Constitutional Law* § 29.34, at 199–200, 200 n. 47 (2d ed.1997) (recognizing United States Supreme Court has yet to rule on an equal protection challenge to such legislative frameworks); *In re Adoption of K.A.S.,* 499 N.W.2d 558, 563 (N.D.1993) (resolving nearly identical question first under state equal protection clause); *Zockert v. Fanning,* 310 Or. 514, 800 P.2d 773, 777 (1990) (same); *cf. Iowa Motor Vehicle Ass'n v. Bd. of R.R. Comm'rs,* 207 Iowa 461, 466–68, 221 N.W. 364, 367 (1928) (analyzing state equal protection claim before the federal claim). The Iowa Equal Protection Clause states:

All laws of a general nature shall have a uniform operation; the general assem-
bly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens.

Iowa Const. art. I, § 6. In *Racing Association of Central Iowa v. Fitzgerald,* 675 N.W.2d 1 (Iowa 2004) (hereinafter *RACI II*), we recently explained, in depth, the nature of equal protection analysis under the Iowa Constitution. In analyzing claims under the Iowa Equal Protection Clause, we independently apply federal principles. *RACI II,* 675 N.W.2d at 6. That is,

federal decisions are persuasive, but not binding, on this court in its consideration of claims based on the Iowa Constitution.... [I]ndependent application ... might result in a dissimilar outcome from that reached by the Supreme Court in considering the federal constitutional claim. This result is particularly possible in view of the "the ill-defined parameters of the equal protection clause."

*Id.* (quoting *Miller v. Boone County Hosp.,* 394 N.W.2d 776, 781 (Iowa 1986)). Our review, then, is not dependent upon a "view of the reach of [the federal constitution]." *Cf. Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979) (United States Supreme Court may review state court decision "where the state constitutional holding depended upon the state court's view of the reach of [the federal constitution]").

■ In analyzing equal protection claims, we have repeatedly held parental rights are fundamental rights. *See, e.g., Santi v. Santi,* 633 N.W.2d 312, 317 (Iowa 2001) ("*[T]he parenting right is a fundamental liberty interest that is protected against unwarranted state intrusion.*" (Emphasis in original, citation omitted.)); *Callender v. Skiles,* 591 N.W.2d 182, 190 (Iowa 1999); *In re Bruce,* 522 N.W.2d 67,

72 (Iowa 1994); *Olds v. Olds*, 356 N.W.2d 571, 574 (Iowa 1984). This principle is consistent with federal authority. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49, 56 (2000) (a parent's interest in custody of a child "is perhaps the oldest of the [recognized] fundamental liberty interests"); *M.L.B. v. S.L.J.*, 519 U.S. 102, 119, 117 S.Ct. 555, 565, 136 L.Ed.2d 473, 489 (1996) (even in cases which have yielded divided opinions, United States Supreme Court "was unanimously of the view that 'the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment'" (quoting *Santosky v. Kramer*, 455 U.S. 745, 774, 102 S.Ct. 1388, 1405, 71 L.Ed.2d 599, 620 (1982) (Rehnquist, J., dissenting))). Because the challenged statutory scheme involves a fundamental right, "to withstand challenge under our state constitution, the infringement on parental liberty interests implicated by the statute must be 'narrowly tailored to serve a compelling state interest.'" *Santi*, 633 N.W.2d at 318 (quoting *State v. Klawonn*, 609 N.W.2d 515, 519 (Iowa 2000)); *see also In re A.C.*, 415 N.W.2d 609, 615–16 (Iowa 1987). When this stringent review of legislation, commonly known as "strict scrutiny," is applied, we will not presume legislation constitutional. *In re Detention of Williams*, 628 N.W.2d 447, 452 (Iowa 2001).

In order to determine if the disparity in the current statutory framework is narrowly tailored to serve a compelling state interest, we must first discuss *In re J.L.L.*, 414 N.W.2d 133 (Iowa 1987). *J.L.L.* also involved an equal protection challenge to the lack of a provision for appointing counsel at public expense in Iowa Code chapter 600A.

In *J.L.L.*, a mother and father *voluntarily* agreed in writing to release custody of their child to an uncle. 414 N.W.2d at 134. The uncle filed a petition for termination of parental rights pursuant to Iowa Code chapter 600A. *Id.* On appeal, the mother claimed her equal protection and due process rights were violated, because the court did not appoint her an attorney at public expense. *Id.* We rejected these claims. *Id.* In doing so, we seized upon the fact the proceedings were *voluntary.* The mother had consented, in "unequivocal" fashion, to the termination. *Id.* at 135. We wrote:

> [I]t was appropriate for the legislature to distinguish between voluntary and involuntary terminations and to provide for counsel at public expense only where the proceedings are involuntary
> . . . .
>
> For a combination of reasons we feel obliged to reject the mother's contention. *Most important is the distinctive nature of a voluntary proceeding . . . .* There is [a pecuniary] advantage to the public in providing for a more simple and less expensive proceeding in *uncontested* terminations.

*Id.* at 134–35 (emphasis added). As the italicized portions of the foregoing excerpt make clear, our decision upholding denial of counsel at public expense in *J.L.L.* was predicated upon a determination that the chapter 600A proceeding in that case was *voluntary.* Implicitly, then, in *J.L.L.* we left open the question of whether a denial of court-appointed counsel in an *involuntary* 600A termination proceeding contravenes the Iowa Equal Protection Clause.

Two state supreme courts have concluded similar statutory frameworks violated state equal protection provisions textually similar to Iowa's article I, section 6. *K.A.S.*, 499 N.W.2d at 563–67; *Zockert*, 800 P.2d at 776–79. In *K.A.S.*, for exam-

ple, it was argued that denying counsel to indigent parents in involuntary 600A terminations furthered the state's "compelling interest in conserving ... fiscal resources." 499 N.W.2d at 565. The North Dakota Supreme Court rejected this argument, and held a state's pecuniary interest in not providing counsel at public expense is legitimate but not *compelling. Id.; cf. M.L.B.,* 519 U.S. at 121, 117 S.Ct. at 566, 136 L.Ed.2d at 491 (reiterating view that mere pecuniary concerns are "unimpressive when measured against the stakes for the defendant"). Nor is such a legislative framework narrowly tailored to further a pecuniary interest; the State could develop measures to recoup these costs, if it desired to do so. *K.A.S.,* 499 N.W.2d at 565; *cf.* Iowa Code § 910.2 (providing for reimbursement in criminal cases). We agree, and add that this proffered interest, standing alone, fails to adequately explain why counsel is provided in 232 terminations but not 600A terminations. On such an analysis, there would appear to be no reason to provide for counsel at public expense in *any* termination case. *But see Lassiter v. Dep't of Soc. Servs.,* 452 U.S. 18, 31–32, 101 S.Ct. 2153, 2161–62, 68 L.Ed.2d 640, 652 (1981) (automatic denial of counsel in all termination proceedings would deny due process).

A more sophisticated argument, also advanced in *K.A.S.,* attempts to justify the difference on the ground that in 600A terminations the state is not an active participant. 499 N.W.2d at 565. Therefore, it is argued, the legislature might legitimately decide only indigents "who must overcome the vast resources of the state" deserve counsel appointed at public expense. *Id.*

█ It is true the county attorney generally prosecutes 232 terminations, and not 600A terminations. Iowa Code § 232.114(1). This argument, however,

understates the actual involvement of the state.... "A stepparent adoption differs from other parental termination cases in that it is not an action brought by the state and argued by state attorneys. But neither is the adoption proceeding a purely private dispute. The state is called upon to exercise its exclusive authority to terminate the legal relationship of parent and child...."

*K.A.S.,* 499 N.W.2d at 565–66 (quoting *In re Jay,* 150 Cal.App.3d 251, 197 Cal.Rptr. 672, 680 (1983)). We agree. Even though James, a private party, brings the action, the state is an integral part of the process in a 600A termination. Although a 600A termination is

> initiated by private parties as a prelude to an adoption petition, rather than by a state agency, the challenged state action remains essentially the same: *[the respondent] resists the imposition of an official decree extinguishing, as no power other than the State can, her parent-child relationships.*

*M.L.B.,* 519 U.S. at 117 n. 8, 117 S.Ct. at 564 n. 8, 136 L.Ed.2d at 488 n. 8 (emphasis added). On further inspection, then, the apparent distinction in the level of state action between 232 and 600A terminations disappears.

We conclude there is no narrowly tailored compelling state interest to deny counsel at public expense to indigent parents facing an involuntary termination of their parental rights under Iowa Code chapter 600A. The statutory framework thus fails to withstand strict scrutiny, and runs afoul of the Iowa Equal Protection Clause. Iowa Const. art. I, § 6; *K.A.S.,* 499 N.W.2d at 566 ("denying an indigent parent court-appointed counsel in a [private termination proceeding] serves no compelling state interest and would deny that parent equality of the privilege of counsel which is granted, upon the same

terms, to other indigent parents"); *Zockert*, 800 P.2d at 778 (same). Put simply, the legislative framework is unconstitutionally underinclusive, insofar as the legislature has withheld the privilege of counsel at public expense to parents facing involuntary 600A terminations. *K.A.S.*, 499 N.W.2d at 566 ("exclud[ing] indigent parents in an adoption proceeding from the class of indigent parents entitled to counsel creates an impermissible, underinclusive legislative classification, because the classification does not include all who are similarly situated").

■ "Where a statute is defective because of underinclusion there exist two remedial alternatives: a court may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion." *Welsh v. United States*, 398 U.S. 333, 361, 90 S.Ct. 1792, 1807–08, 26 L.Ed.2d 308, 331 (1970) (Harlan, J., concurring). The latter remedy is appropriate in this case: on remand, Krista should be appointed counsel at public expense. To deny counsel in all termination proceedings would contravene legislative intent. *See* Iowa Code § 600A.1 (provisions of chapter 600A shall be liberally construed, and interests of parents of child "be given due consideration in this interpretation"); *cf. In re Chambers*, 261 Iowa 31, 34–35, 152 N.W.2d 818, 821 (1967) (extending statutory right to counsel to appellate level, in part, on liberality grounds); *Zockert*, 800 P.2d at 779 ("lawmakers have disclosed no intent to deny [the] privilege [of counsel] but, rather, an intent that parents enjoy the privilege when faced with a termination...."). It would also call into question the constitutionality of those proceedings. *See Lassiter*, 452 U.S. at 31–32, 101 S.Ct. at 2161–62, 68 L.Ed.2d at 652 (although federal Due Process Clause does not mandate appointment of counsel in all termination proceedings, trial courts must not automatically deny counsel, but instead engage in a two-prong balancing test); *K.A.S.*, 499 N.W.2d at 567 ("If a statute is susceptible of two constructions, one of which would render it of doubtful constitutionality and one of which would not, the latter must be adopted."). The district court is reversed, and on remand Krista should be appointed counsel at public expense. *See* Iowa Code ch. 13B (outlining responsibilities of the state public defender). Given this conclusion, we need not rule on Krista's other constitutional claims.

## IV. Conclusion

We hold the Iowa Equal Protection Clause guarantees an indigent parent the right to counsel in an involuntary termination of parental rights proceeding brought pursuant to Iowa Code chapter 600A. The district court's ruling to the contrary must be reversed, and on remand counsel shall be appointed for Krista at public expense. We do not reach Krista's other equal protection and due process claims.

**REVERSED AND REMANDED.**