# IN THE COURT OF APPEALS OF IOWA

No. 14-1877
Filed May 20, 2015

**IN THE INTEREST OF M.M. and M.R.,**
     **Minor Children,**

**S.A., Mother,**
     Appellant,

**H.M., Father,**
     Appellant.

_____

     Appeal from the Iowa District Court for Page County, Susan Christiansen,

District Associate Judge.

     A mother and father separately challenge the termination of their parental

rights.  **AFFIRMED ON BOTH APPEALS.**

     Justin R. Wyatt of Woods & Wyatt, P.L.L.C., Glenwood, for appellant-

mother.

     Ashley Kissel of Kissel Law P.L.L.C., Glenwood, for appellant-father of

M.M.

     C. Kenneth Whitacre, Glenwood, for father of M.R.

     Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd and Kathryn

Lang, Assistant Attorneys General, Jeremy Peterson, County Attorney, and Carl

Sonksen, Assistant County Attorney, for appellee.

     Vicki Danley, Sidney, attorney and guardian ad litem for minor children.

     Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, P.J.**

This case involves half-sisters, M.M., age two, and M.R., age five. Their mother, Sierra, appeals the termination of her parental rights to both girls. M.M.'s father, Heath, likewise appeals the termination of his parental rights.[1] The girls have been out of their parents' custody since June 15, 2013. The record reveals the biggest barriers to reunification have been unresolved chemical dependencies and stints of incarceration by both parents.

On appeal, Sierra challenges the juvenile court's denial of her motion to continue the termination hearing until her scheduled release from prison. Sierra also challenges the separation of the sisters in their permanent placements. Heath challenges the statutory grounds for termination, asks for additional time to work toward reunification, and argues termination is not in the best interest of M.M. Finding no merit to the issues raised by either parent, we affirm the juvenile court's order.

I. **Background Facts and Proceedings**

The Iowa Department of Human Services (DHS) removed the children in June 2013 after Heath and Sierra were arrested for public intoxication and possession of methamphetamine. These arrests occurred while the family was participating in a safety plan implemented after the parents' prior arrests on methamphetamine and weapons charges.

---

[1] The juvenile court also terminated the parental rights of M.R.'s father, but he is not a party to this appeal.

The children were placed in various foster care homes. M.R. displayed troubling behaviors, including aggression toward her younger sister. The DHS case manager did not believe the sisters shared a strong bond. M.R. also had medical needs that were not addressed until she was in DHS custody. For instance, she had problems with her eyes and had not been immunized despite being five years old. Most significantly, M.R. suffered serious dental problems from a diet of sugary drinks and poor hygiene—resulting in her teeth rotting below the gums and the necessity of having ten to twelve crowns implanted.

The juvenile court adjudicated M.R. and M.M. as children in need of assistance (CINA) under Iowa Code sections 232.2(6)(c)(2), (g), and (n) (2013) on September 5, 2013. During both the adjudicatory hearing and the following dispositional hearing, Sierra and Heath were incarcerated. Due to their incarceration, they had not participated in substance abuse or mental health evaluations. Heath was released in October 2013.

The juvenile court held a review hearing on February 6, 2014, and found the parents had not advanced toward reunification. Sierra remained in prison. Heath was again incarcerated after being arrested for operating while intoxicated, second offense on December 13, 2013. At the review hearing, a DHS worker reported concerns over the two children being placed together as M.R.'s behaviors were "overwhelming."

Heath was released from jail in April 2014 and remained on probation. At this point in the case Heath started to make progress. He found employment and his own residence. He completed a substance abuse evaluation at Zion

Recovery on May 5, 2014, and consistently tested negative for drugs. Heath was sporadic in his attendance at follow-up substance abuse sessions, but attributed his absences to a work-related injury and ensuing back problems. Heath also attended visits with M.M. regularly until she was placed with her paternal aunt and uncle in California on July 13, 2014.

M.M.'s placement was separate from her older sister M.R., who was placed with her maternal grandmother in Missouri on June 27, 2014.

The sisters' out-of-state placements came in the months following the State's filing of a petition to terminate parental rights on May 8, 2014. The petition alleged Sierra's rights should be terminated under Iowa Code sections 232.116(1)(e), (f) and (h), and Heath's rights under section 232.116(1)(e) and (h). The juvenile court set the termination hearing for August 1, 2014.

Still incarcerated, on July 24, 2014, Sierra filed a motion to continue the hearing for six to eight weeks to allow her to appear in person. The State and the children's guardian ad litem (GAL) resisted the continuance. The district court denied the motion on July 25, 2014, but ordered that Sierra could participate in the hearing by telephone.

At the August 1 hearing, the State presented testimony from DHS case manager Sue Garey and service worker Brooke Van Fosson of Boys Town. Sierra's attorney was presented at the hearing and called Sierra to testify by telephone from a women's prison in Missouri. Heath was present at the hearing

with his attorney, but did not testify. At the conclusion of the hearing, the GAL recommended termination.[2]

On October 21, 2014, the juvenile court issued its order terminating parental rights. Sierra and Heath separately challenge that order.

## II. Standards of Review

We review termination of parental rights orders de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We are not bound by the juvenile court's factual findings, but we give them weight, especially when it comes to witness credibility. *Id.* The best interests of the children remain the paramount concern in termination proceedings. *In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011).

We review an order denying a motion to continue for an abuse of discretion. *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996). We reverse only if injustice will result to the party desiring the continuance. *Id.* To show an abuse of discretion, the complaining party must show the juvenile court's action was unreasonable under the attending circumstances. *In re J.L.L.*, 414 N.W.2d 133, 135 (Iowa 1987).

## III. Analysis of Mother's Arguments

Sierra does not challenge the statutory grounds for termination. Instead, she appeals the denial of her motion to continue the termination hearing and contends the juvenile court erred in approving a placement that separated the siblings. We will examine her arguments in turn.

---

[2] The juvenile court allowed the parties to file closing statements as briefs. The State filed its brief on August 12, 2014. The guardian ad litem joined the State's brief on August 20. Neither the mother nor Heath filed closing statements.

**A. Motion to Continue**

A May 19, 2014, scheduling order set the termination of parental rights hearing for August 1, 2014. On July 24, 2014, Sierra, who was incarcerated in Missouri, asked for a continuance of six to eight weeks so she could participate in person. The State and GAL filed resistances. After reviewing the motion and resistances, the juvenile court denied the continuance. The court found the delay was not in the children's best interests, considering their ages, the length of time they had been out of the home, and Sierra's unresolved legal matters in Missouri. The court arranged for Sierra to participate by telephone.

On appeal, Sierra argues "the court erred in finding the matter was so urgent that it could not wait 6 weeks for the mother to participate in person." She alleges she was unable to effectively participate because of a poor connection and that "testimony by others in the courtroom was completely unintelligible at times."

We disagree with Sierra's suggestion that the trial date held no urgency. "Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). In this case, the juvenile court was appropriately concerned for the children's best interests. A six- to eight-week continuance would have benefitted only the mother. *See In re T.D.H.*, *344* N.W.2d 268, 271 (Iowa Ct. App. 1983). We appreciate the "parental interest in the integrity of the family unit," but that interest "may be forfeited by certain parental conduct." *Id.* Here, the mother's positive drug test resulted in a revocation of probation and return to prison. The juvenile court did not abuse its

discretion in declining to delay the trial and instead allowing the mother to appear telephonically.

Moreover, at no time during the hearing did the mother or her attorney direct the court's attention to a poor telephone connection. The record does show the juvenile court allowed a ten-minute recess so the mother could change telephones because of a lockdown in the Missouri facility. The court reporter was able to transcribe a clear version of the mother's trial testimony. Accordingly, we place no credence in the mother's arguments concerning a lack of meaningful participation.

The children had been without permanency for more than one year before the termination hearing. Declining to entertain a longer delay was in their best interest. We find no abuse of discretion in the denial of the continuance.

## B. Separate Sibling Placements

In the termination order, the juvenile court found "good and compelling reasons exist to not place [M.M.] and [M.R.] in the same home" and listed them as follows:

> • The girls do not have a strong bond with each other.
> • [M.R.'s] ongoing behavioral and educational needs continue to negatively affect [M.M.].
> • [M.R.] requires constant attention which results in [M.M.] suffering due to the episodes that involve [M.R.'s] behavior and deviance.
> • Separate placement provides not only protection for [M.M.] but a higher level of supervision and attention for [M.R.].

Sierra argues the court improperly approved separate placements for M.M. and M.R. She argues the court failed to take into account her testimony that she can care for both children at the same time and if they were placed

together in Missouri she can address any behavioral issues the children may have.

The State argues Sierra needed to appeal from the review/modification order of February 6, 2014 order to preserve this issue. We disagree. The change in custody provision in that order was not a final ruling subject to appeal. *See In re T.R.*, 705 N.W.2d 6, 11 (Iowa 2005). Even if it was, the juvenile court reaffirmed the separate placements in the termination order and the issue is properly preserved for our review.

Siblings should be kept together whenever possible. *See In re L.B.T.*, 318 N.W.2d 200, 202 (Iowa 1982); *see also* Iowa Code § 232.108(1). But the best-interests consideration focuses on the children's safety, the best placement for furthering their long-term nurturing and growth, and their physical, mental, and emotional condition and needs. *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (citing Iowa Code § 232.116(2)). To achieve this goal, separation of siblings may be allowed. *See* Iowa Code § 232.108(4) (allowing court to suspend visitation when required by well-being of the sibling).

After our de novo review of the record, we reach the same conclusion as the district court on this point. The DHS caseworker believed the children would be healthier living apart. M.R. acted aggressively toward her younger sister, to the extent that some of M.M.'s first communications were for M.R. to "leave her alone." Because the sisters had not been consistently raised in the same household, they had not developed a strong bond. The juvenile court was entitled to reject Sierra's testimony to the contrary. The record indicated each

child is doing well in her respective relative placement. We agree with the juvenile court that the current separate placements are in their best interests.

## IV. Analysis of Father's Arguments

In his petition on appeal, Heath raises three issues: (1) he claims the State did not adequately prove the statutory grounds for termination, (2) he seeks an additional six months to reunify with M.M., and (3) he contends termination was not in his daughter's best interest. We will address each claim in turn.

### A. Grounds for termination

The juvenile court terminated Heath's rights under sections 232.116(1)(e)[3] and (h).[4] When the court terminates parental rights on more than one statutory

---

[3] To prove section 232.116(1)(e), the State must prove the following elements by clear and convincing evidence:
    (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
    (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
    (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.
Iowa Code § 232.116(1)(e).

[4] To prove section 232.116(1)(h) the State must show by clear and convincing evidence:
    (1)    The child is three years of age or younger.
    (2)    The child has been adjudicated a child in need of assistance pursuant to section 232.96.
    (3)    The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the

ground, we may affirm if the State established any one of the grounds by clear and convincing evidence. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). We find the State proved paragraph (h) by clear and convincing evidence.

Heath contests the fourth element of subsection (h), that M.M. cannot be returned to his custody at the present time.[5] He argues "[a]t the time of the termination hearing, [he] had done everything asked of him by the department and the court and then some."

The juvenile court was concerned about Heath's extensive history of substance abuse. Heath had completed a substance abuse evaluation and tested negative for drugs since May 2014. He started to engage in group sessions to follow through on the evaluator's recommendations, but attended inconsistently because of work obligations and a work-related back injury. Given his history, the juvenile court was looking for "a more significant period of sobriety and consistent participation in substance abuse treatment" before it could conclude he had adequately addressed his addiction.

---

last six consecutive months and any trial period at home has been less than thirty days.
(4)     There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.
Iowa Code § 232.116(1)(h).
[5] "At the present time" means the time of the termination hearing. *See A.M.*, 843 N.W.2d at 111.

Heath has a criminal record and a history of methamphetamine use. We acknowledge Heath has made positive strides since his release from jail in April 2014. We applaud the steps he has taken. But his child needs permanency, and he simply is not ready yet. At the time of the termination hearing, M.M. had been removed from parental care for more than one year. She was just under one year old at the time of removal. For more than half her life, she has been without a permanent home. "A child should not be forced to endlessly suffer the parentless limbo of foster care." *In re J.P.*, 499 N.W.2d 334, 339 (Iowa Ct. App. 1993).

Heath had not progressed past supervised visitation. And he has not had visitation with M.M. since July 2014, when the child was placed with relatives in California. He has been unable to address his substance abuse needs or goals of the case plan due to his incarceration for long periods of the CINA proceedings. Nothing indicates Heath would have been able to safely parent M.M. at the time of the hearing. We find the State proved by clear and convincing evidence all of the elements of subsection (h).

## B. Additional time

On appeal Heath seeks additional time for reunification. The father did not make that request at the hearing, and such an extension of time was not addressed by the juvenile court. Accordingly, we find this issue is not preserved. *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994) ("As a general rule, an issue not presented in the juvenile court may not be raised for the first time on appeal.")

### C. Best Interests

Finally, Heath contends terminating his parental rights was not in the best interest of M.M. In support of his contention, he cites a rebuttable presumption that a child's best interests are served by being in the custody of her natural parents and notes M.M. was only in her current placement for a few weeks before the termination hearing.

Applying the best interest standards in section 232.116(2), we conclude termination was in M.M.'s best interest. Heath had been unavailable to the child for much of the CINA proceedings due to his incarcerations. The evidence at the termination hearing did not support a strong bond between them. Even though she had not been there long, the DHS worker testified M.M was doing well with her aunt and uncle in California. M.M. is at an adoptable age. The juvenile court terminated her mother's parental rights in the same proceeding. "Terminating the father's parental rights so the child can be permanently placed gives primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the child under section 232.116(2)." *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

**AFFIRMED.**