# IN THE COURT OF APPEALS OF IOWA

No. 15-1814
Filed October 12, 2016

**IN THE INTEREST OF C.J.P.,**
**Minor Child,**

**D.P., Mother,**
    Petitioner-Appellee,

**J.E., Father,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hansen, Judge.

An incarcerated father appeals the termination of his parental rights under Iowa Code chapter 600A. **AFFIRMED.**

Alexander D. Smith of Parrish Kruidenier Law Firm, Des Moines, and Stephie N. Tran (until withdrawal), West Des Moines, for appellant father.

Shane C. Michael of Michael Law Firm, West Des Moines, for appellee mother.

Cherie L. Johnson of Law Office of Cherie L. Johnson, P.L.C., West Des Moines, guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., Tabor, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**TABOR, Judge.**

An incarcerated father, Jerry, appeals the district court's order terminating his parental rights to his four-year-old daughter, C.J.P. Jerry contends he did not abandon his daughter as contemplated by Iowa Code section 600A.8(3) (2015). He further argues severing their legal relationship is not in C.J.P.'s best interests.

We disagree on both points. As the district court observed, "even considering his current situation," Jerry has made only "minimal efforts" to establish a relationship with C.J.P. Because Jerry has been in prison for most of his daughter's life and has done little to reach out to her, no parent-child bond exists. The district court found C.J.P. was thriving in the care of her mother, Danielle, and maternal grandparents, and exposure to Jerry—given his violent criminal history—would not be in C.J.P.'s best interests. Because we reach the same conclusions as the district court, we affirm.

## I.      Facts and Prior Proceedings

Jerry had some visits with C.J.P. after she was born but never lived with the child. He went to prison when his daughter was just three months old. Jerry is serving a thirty-year prison sentence with a seven-year mandatory minimum on convictions of robbery, theft, and conspiracy to deliver drugs. He is eligible for parole in 2018 but testified parole is not guaranteed. Even after his release, he will be required to live in a halfway house under the supervision of the Iowa Department of Corrections. Jerry has a history of committing assaults and admits he was verbally abusive to Danielle during their relationship.

Danielle and her parents are currently C.J.P.'s caretakers. C.J.P. has lived with her maternal grandparents since she was an infant and is well

integrated into their home. The grandparents took custody of C.J.P. when both her parents were incarcerated. When asked by the guardian ad litem who her "daddy" was, C.J.P. responded "Papa Terry"—her grandfather.

Danielle filed a petition to terminate Jerry's parental rights on March 31, 2015. The district court held a hearing in August and granted Danielle's petition in September 2015. Jerry now appeals.

## II. Untimely Notice of Appeal

The district court issued its termination order on Sunday, September 27—via the Electronic Data Management System (EDMS). Jerry's trial counsel did not file a notice of appeal until October 28—one day after the thirty-day deadline. Our supreme court asked the parties to file statements addressing its jurisdiction to consider the untimely appeal. Jerry's counsel explained she calculated the filing deadline from Monday, September 28, when the clerk accepted the entry of judgment.[1] In November 2015, the supreme court issued an order submitting the jurisdictional question with the appeal. In December 2015, the court issued *Concerned Citizens of Se. Polk Sch. Dist. v. City Dev. Bd.*, 872 N.W.2d 399, 404 (Iowa 2015), which held the official filing date of an order is the date it is filed by the court and electronically stamped in EDMS and not the date of the notice of filing from the clerk's office.

Jerry's appellate brief was drafted by new counsel, who acknowledges the notice of appeal was untimely under the *Concerned Citizens* decision. Appellate counsel contends trial counsel rendered ineffective assistance in missing the

---

[1] Danielle's counsel did not file a statement and was late in seeking to file a proof brief. The supreme court rejected her request to file a belated proof brief and ordered the appeal to proceed without the appellee's participation.

deadline.[2] Alternatively, Jerry asserts he is entitled to a delayed appeal because it is in the interests of justice.

We opt to take the second route. Our court has held the inherent power to grant a delayed appeal extends to termination of parental rights cases under chapter 232. *See In re A.B.*, No. 99-0049, 1999 WL 976097, at *3 (Iowa Ct. App. Oct. 27, 1999) (noting delayed appeals may be granted in criminal cases "when counsel's procedural errors have denied a defendant's clearly expressed intention and good faith effort to appeal" and finding the same due process considerations apply to termination of parental rights cases). We believe the same is true for indigent parents in termination cases arising under chapter 600A and grant Jerry's request for a delayed appeal. *Cf. In re S.A.J.B.*, 679 N.W.2d 645, 651 (Iowa 2004) (holding Iowa's equal protection clause guarantees indigent parents the right to counsel in involuntary termination of parental rights proceeding brought under chapter 600A).

### III.     Standard of Review

We conduct a de novo review of termination proceedings under chapter 600A. *See In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). We defer to the factual findings of the district court, especially witness-credibility findings, but we are not bound by them. *See In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). When interpreting chapter 600A, the best interests of the child involved is "the paramount consideration," but we also give "due consideration" to the interests of the child's parents. *See* Iowa Code § 600A.1. The parent petitioning

---

[2] Due process considerations require appointed counsel to provide effective assistance. *Cf. In re D.W.*, 385 N.W.2d 570, 579 (Iowa 1986) (considering chapter 232 termination).

for termination has the burden to show the other parent has abandoned the child. *See id.* § 600A.8(3)(b); *G.A.*, 826 N.W.2d at 129. The termination findings must be based on clear and convincing proof. Iowa Code § 600A.8.

### IV. Analysis

#### A. Evidence of Abandonment

Danielle's petition for termination of Jerry's parental rights alleged he had abandoned C.J.P. under section 600A.8(3)(b).[3] Abandonment means "reject[ing] the duties imposed by the parent-child relationship." *Id.* § 600A.2(19). That rejection may be shown when the parent, "while being able to do so, mak[es] no provision or mak[es] only a marginal effort to provide for the support of the child or to communicate with the child." *Id.*

A parent is deemed to have abandoned a child who is six months of age or older "unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by": (1) visiting the child at least monthly when physically and financially able to do so; (2) in lieu of visiting, having regular communication with the child or with the person having custody of the child; or (3) living with the child for six months within one year of the termination hearing and holding himself or herself out to be the parent. *Id.* § 600A.8(3)(b). A parent's subjective intent to maintain a relationship with his or her child does not preclude a finding of abandonment if

---

[3] The petition also sought termination under section 600A.8(9): "[T]he parent has been imprisoned and it is unlikely that the parent will be released from prison for a period of five or more years." The district court found Danielle had not proven this ground by clear and convincing evidence because Jerry was eligible for parole in 2018.

the parent's subjective intent is not manifested through the actions listed in subsection (b). *Id.* § 600A.8(3)(c).

Under section 600A.8(3)(b), the threshold element of "substantial and continuous or repeated contact" is economic contributions. The district court found: "It is undisputed that [Jerry] has not provided any financial support for C.J.P. during her life." The court noted Jerry earned $120 per month through the prison system and, admittedly, could have sent some portion of those earnings to his mother to assist with C.J.P.'s support, but he did not do so. Under the predicate language of section 600A.8(3)(b), Jerry has abandoned his daughter. *See In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012).

Not only has Jerry failed to provide financial support, he has not kept in regular communication with C.J.P. or her maternal grandparents. Jerry's only effort to stay in touch with his young daughter is by writing her letters a few times a year, including holiday and birthday greetings—all the while realizing she likely did not receive them. Jerry has not inquired about the possibility of adding C.J.P. to his visitor list at the Newton Correctional Facility or setting up telephone conversations with her. He testified he considered making a recording of his voice for C.J.P. but did not follow through with the plan. He has not asked any of his family members to help him establish a relationship with C.J.P.

It is true Jerry's long-term incarceration allows him limited options to forge bonds with his young daughter, but his own poor choices led to his predicament. "Under Iowa's termination case law, a parent 'cannot use his incarceration as a justification for his lack of relationship with the child.'" *In re C.A.V.*, 787 N.W.2d at 101 (citation omitted). Moreover, Jerry has not pursued those options that do

exist in an effort to build a relationship with C.J.P. On this record, we find clear and convincing evidence to support the district court's finding of abandonment.

## B. Child's Best Interests

After the petitioning parent has established a statutory ground for termination, that parent must prove termination of the other parent's rights is in the best interests of the child. *In re R.K.B.*, 572 N.W.2d 600, 602 (Iowa 1998). We turn to the question of C.J.P.'s best interests, giving "due consideration" to the interests of Jerry and Danielle. *See* Iowa Code § 600A.1.

After independently reviewing the record, we concur with the district court's assessment—termination of Jerry's parental rights serves C.J.P.'s best interests. In setting out an analytical framework to determine the best interests of a child under chapter 600A, our supreme court has found the parallel provisions in section 232.116(2)[4] to be a useful guide. *See In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010). C.J.P.'s short-term and long-term nurturing is best safeguarded by her maternal grandparents, who have raised her from infancy, and her mother, who is now able to provide for the child's well-being. Jerry's imprisonment on violent felony charges and his assaultive history do not make him a good prospect for future parenting. Because Jerry has not created an emotional bond with C.J.P., none is broken by the termination.

**AFFIRMED.**

---

[4] Iowa Code section 232.116(2) states, in relevant part:

> [T]he court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child. This consideration may include . . . :
>> a. Whether the parent's ability to provide the needs of the child is affected by . . . the parent's imprisonment for a felony.