**In the Interest of S.R., Minor Child, S.R.H., Father, Appellant.**

No. 95–1529.

Court of Appeals of Iowa.

March 27, 1996.

Eric W. Johnson of Beecher, Rathert, Roberts, Field, Walker & Morris, P.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Kathrine S. Miller–Todd, Assistant Attorney General, for appellee State.

Sharon Briner, Assistant Public Defender, Waterloo, for minor child.

Heard by SACKETT, P.J., and HABHAB and HUITINK, JJ.

HABHAB, Judge.

S.R. was born on December 28, 1984. Her mother is Kandy and her father is Sherman. On March 23, 1994, the State filed a child in need of assistance (CINA) petition based on the mother's substance abuse problem. On May 4, 1994, the court found S.R. and her siblings to be CINA pursuant to Iowa Code sections 232.26(b), (c)(2), (n), and (o) (1993).

On May 15, 1995, the State filed an amended and substituted termination petition seeking to terminate the parental rights of the mother and the putative fathers of the various siblings, including Sherman as S.R.'s father. Sherman received personal service of the notice of termination hearing on May 18, 1995, while in a residential treatment facility in Waterloo. The notice recited:

> [Y]ou have a right to be represented by an attorney at the hearing. If you are financially unable to hire an attorney, the Court will appoint one for you, if you notify the Clerk of Juvenile Court of this fact within five days after you receive this Notice. If you do not employ an attorney or notify the Clerk within the specified time that you wish an attorney, you will be deemed to have waived this right.

Notice by publication was also had between May 30, 1995 and June 13, 1995. Sherman did not contact the clerk to request counsel.

The termination hearing was held as scheduled on July 28, 1995. The father was in a residential treatment center in Mt. Pleasant, Iowa, at that time. He did not appear at the hearing nor was he represented by an attorney or a guardian ad litem. The juvenile court entered an order on July 28, 1995, terminating Sherman's parental rights.

On August 3, 1995, the court received a letter from Sherman. He indicated he called on July 28 requesting a continuance of the hearing because he was in the residential treatment center in Mt. Pleasant. He asked that a copy of the letter be sent to his attorney; he claimed he thought an attorney had been appointed for him; and he noted his attorney had not contacted him. He then stated if no attorney had been appointed, he wanted one appointed. A second letter from Sherman was received by the district court on August 9. On September 1, 1995, the court entered an order concluding there was not good cause to set aside the termination order. The court then appointed appellate counsel for Sherman.

Sherman appeals.

■ **I.** *Scope of Review.* Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied sub nom. J.G. v. Tauke*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985).

■ **II.** *Due Process.* The right of a parent to companionship, care, custody, and management of children has been recognized as far more precious than property rights and more significant and priceless than liberties which derive merely from shifting economic arrangements. *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972); *May v. Anderson*, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221, 1226 (1953); *In re A.M.H.*, 516 N.W.2d 867, 870 (Iowa 1994). As our supreme court stated in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982):

> The fundamental liberty of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protection than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds,

it must provide the parents with fundamentally fair procedures.

*Santosky v. Kramer*, 455 U.S. at 753–54, 102 S.Ct. at 1394–95, 71 L.Ed.2d at 606.

▆▆ The termination of Sherman's parental rights requires that we scrutinize rather closely the procedure employed by the State in the termination proceedings to ensure that due process requirements have been met. Generally, the fundamental requirement of due process is an opportunity to be heard. *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287, 299 (1970); *In re A.M.H.*, 516 N.W.2d 867, 870 (Iowa 1994). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972).

Sherman raises two procedural issues on appeal. We will consider each in the divisions that follow.

▆ **III. *Guardian Ad Litem.*** Sherman contends the district court erred in not appointing a guardian ad litem pursuant to Iowa Rule of Civil Procedure 13. This rule states:

> No judgment without a defense shall be entered against a party then a minor, or confined in a penitentiary, reformatory or any state hospital for the mentally ill, or one judicially adjudged incompetent, or whose physician certifies to the court that he appears to be mentally incapable of conducting his defense. Such defense shall be by guardian ad litem; but the regular guardian or the attorney appearing for a competent party may defend unless the court supersedes him by a guardian ad litem appointed in the ward's interest.

Iowa R.Civ.P. 13. Rule 13 is intended to protect specifically listed classes of litigants and place these litigants on equal footing through representation by a guardian ad litem. *See In re Marriage of McGonigle*, 533 N.W.2d 524, 525 (Iowa 1995).

The specifically listed protected classes are: (1) minors; (2) parties confined in a penitentiary, reformatory, or any state hospital for the mentally ill; or (3) parties judicially adjudged incompetent, or whose physician certifies to the court that he appears to be mentally incapable of conducting his defense. Iowa R.Civ.P. 13. We are only concerned with the second class. The issue before us is whether Sherman was "confined in a penitentiary, reformatory, or any state hospital for the mentally ill" at the time of the hearing which resulted in the termination of his parental rights.

Digressing for a moment, we are reminded that the Iowa Rules of Civil Procedure were adopted in 1943. In the annotated Iowa Rules of Civil Procedure, the comment to rule 13 states that rules 13 and 14 changed and consolidated prior separate statutes and made the practice identical in all cases as there described.

The two statutes referred to in the comment are sections 10989 and 10997 of the 1939 Iowa Code. Section 10989 provided, "No judgment can be rendered against a prisoner in the penitentiary until after a defense made for him by his attorney, or, if there is none, by a person appointed by the court." Section 10997, although not relevant to this action, provides in essential part that no judgment could be rendered against a minor until after a defense by a guardian.

Under section 12889 of the 1939 Iowa Code and section 687.1 of the 1975 Iowa Code, public offenses were divided into felonies and misdemeanors. A felony was described as a public offense "which may be punished with death, or which is, or in the discretion of the court may be, punished by imprisonment in the penitentiary or men's reformatory." Iowa Code § 12980 (1939).[1] Most convicted felons were imprisoned either in the penitentiary at Fort Madison or the men's or women's reformatory.[2] Section 13963 (1939) and section 789.16 (1975) provided:

---

1. The 1975 Iowa Code at section 687.2 provided, "a felony is a public offense, which is, or in the discretion of the court may be, punished by imprisonment in the penitentiary or men's reformatory or the women's reformatory."

2. Section 13960 of the 1939 Iowa Code and section 789.13 of the 1975 Iowa Code provided that when a person was over sixteen years of age and was convicted of a felony, except treason or murder, the court imposing a sentence of con-

Any male person who shall be committed to the penitentiary, except those convicted of murder, treason, sodomy, or incest, and who at the time of commitment is between the ages of sixteen and thirty years, and who has never before been convicted of a felony, shall be confined in the men's reformatory; provided, however, that persons between the ages of sixteen and thirty years convicted of rape, robbery, or of breaking and entering a dwelling house in the nighttime with intent to commit a public offense therein, may, as the particular circumstances may warrant, in the discretion of the court, be committed to either the men's reformatory at Anamosa or the penitentiary at Fort Madison.

Iowa Code § 13963 (1939) and Iowa Code § 789.16 (1975).

We have referred to these provisions of the 1939 and 1975 Iowa Codes only to emphasize that in those time frames the trial judge did the sentencing and, when doing so, committed criminal defendants convicted or pleading guilty to a felony to either the men's reformatory at Anamosa, the women's reformatory, or the penitentiary at Fort Madison. In addition, as will be pointed out later, there has been a considerable extension of institutions where criminal defendants can be confined. In those instances, the places of confinement take on the semblance of a penitentiary and reformatory.

The massive revision and adoption of the new criminal code,[3] which generally took effect on January 1, 1978, completely changed the method of confining criminal defendants. Unlike the prior law that vested this responsibility with the sentencing judge, Iowa Code section 901.7 (1995) does not dictate the place of confinement. Rather, that section directs that when imposing a sentence of confinement for more than one year,[4] the court is to commit the defendant to the custody of the director of the Iowa Department of Corrections.[5] Iowa Code § 901.7 (1995). The director, in turn, determines the appropriate place of confinement from the list of those institutions administered by him or her. Iowa Code § 902.5 (1995).

The Iowa Department of Corrections was established to be responsible for the control, treatment, and rehabilitation of offenders committed under law to the following institutions: Iowa correctional institution for women; Iowa state men's reformatory; Iowa state penitentiary; Iowa medical and classification center; north central correctional facility at Rockwell City; Mt. Pleasant correctional facility; Clarinda correctional facility; correctional release center; rehabilitation camps; and other institutions related to the preceding institutions but not attached to the campus of the main institution as program developments require. As it relates to Mt. Pleasant, Iowa Code section 904.204 (1995) provides:

The correctional facility at Mt. Pleasant shall be utilized as a medium security facility for men primarily for treatment of in-

finement in a penitentiary, men's or women's reformatory, was not to fix the limit or duration of the penalty, but the term of imprisonment was not to exceed the maximum allowed by law for the crime committed.

3. Under our present code, a public offense is described as one which is prohibited by statute and is punishable by fine or imprisonment. Iowa Code § 701.2 (1995). A public offense is a felony of a particular class when the statute defining the crime declares it to be a felony. Felonies by statute carry different classes. Iowa Code § 701.7. All public offenses which are not felonies are misdemeanors and misdemeanors are aggravated misdemeanors, serious misdemeanors, or simple misdemeanors.

4. Iowa Code chapter 903 (1995) relates to misdemeanors. Section 903.4 concerns the confinement of misdemeanants for a period of one year or less; also, where confinement is for more than one year, custody is to the director of the Iowa Department of Corrections. *See also* Iowa Code § 903.5 (1995) (establishes a preference for commitment to local facilities for misdemeanants). There are a number of exceptions that have not been noted in this opinion.

5. Iowa Code section 902.3 (1995) requires that the court, in imposing a sentence of confinement, commit the person into the custody of the director of the Iowa Department of Corrections for an indeterminate term. There are exceptions to this general statement. As noted in section 902.3, the court may sentence a person convicted of a Class D felony for violation of section 321J.2 to imprisonment for up to one year in a county jail under section 902.9(4) and that person is not under the custody of the director of the Iowa Department of Corrections.

mates who exhibit treatable personality disorders, with or without accompanying history of drug or alcohol abuse. Such inmates may apply for and upon their application may be selected for treatment by the staff of the treatment facility at Mt. Pleasant in accordance with section 904.503.

Iowa Code § 904.204 (1995).

Returning then to the problem at hand, all we have before us is that Sherman, at the time of the termination proceedings, was an inmate at Mt. Pleasant. We know not the circumstances surrounding his entry to Mt. Pleasant nor the crime involved that caused his commitment to the director of the Iowa Department of Corrections.[6] We therefore are compelled to remand this case to the district court for the sole purpose of making a record as to the circumstances surrounding the reasons for his commitment to Mt. Pleasant.

Thus, we remand this case to the trial court to take additional evidence as to the circumstances surrounding Sherman's entry to Mt. Pleasant. A copy of the transcript of the additional evidence, along with the pertinent exhibits, shall be filed with the clerk of the supreme court no later than six weeks following the filing of this decision. The parties may file additional briefs, if desired, but the same must be filed within the six-week limitation. *We retain jurisdiction.* Since we retain jurisdiction, we direct that the attorney appointed to represent Sherman on appeal shall continue to represent him at the remand proceedings.

■ **IV.** *Court–Appointed Counsel.* Sherman contends he had a right to counsel and the district court erred in not providing him counsel. When a petition to terminate parental rights is filed, the parent identified in the petition has the right to counsel or court-appointed counsel if they cannot afford counsel. Iowa Code § 232.113 (1995). Sherman was personally served with notice which stated, "If you are financially unable to hire

an attorney, the Court will appoint one for you, *if you notify the Clerk of Juvenile Court of this fact within five days after you receive this Notice.*" (Emphasis added.) The requirements to obtain court-appointed counsel are very plainly stated in the notice. Sherman was personally served with this notice. Sherman made no effort to contact the clerk to request court-appointed counsel until the letter received by the district court on August 3. We find Sherman waived his right to court-appointed counsel due to his inaction following the notification of his rights in the personal service.

In summary, we agree with the trial court that Sherman waived his right to court-appointed counsel, but we remand this case to the trial court for proceedings not inconsistent with this opinion.

**REMANDED WITH DIRECTIONS.**

---

6. There is little case law in Iowa as to what qualifies as a penitentiary, reformatory, or a state hospital for the mentally ill. The supreme court has suggested a drug addiction ward of St. Luke's Hospital in Cedar Rapids is not a state hospital for the mentally ill. *In re T.C.,* 492 N.W.2d 425, 428–29 (Iowa 1992). The court has also suggested the county jail is not a penitentiary or reformatory. *Id.* at 429.