## IN THE COURT OF APPEALS OF IOWA

No. 15-0920
Filed August 19, 2015

**IN THE INTEREST OF M.C.-R., M.M., M.M., AND M.M.,**
**Minor Children,**

**T.M., Father,**
**Appellant,**

**M.C.-M., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Winnebago County, Karen Kaufman Salic, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Crystal L. Ely of Young Law Office, Mason City, for appellant father.

Michael J. Moeller of Sorensen Law Office, Clear Lake, for appellant mother.

Thomas J. Miller, Attorney General, Kathryn K. Lang, Assistant Attorney General, and Adam D. Sauer, County Attorney, for appellee State.

Theodore J. Hovda, Garner, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**VAITHESWARAN, P.J.**

A mother of four children and the father of two of the children separately appeal the termination of their parental rights. The mother contends (A) the State failed to prove the grounds for termination cited by the district court, (B) the Department of Human Services failed to make reasonable efforts towards reunification, (C) termination was not in the children's best interests, and (D) the district court should not have terminated her parental rights based on the strength of her bond with the children. The father contends (A) he did not receive notice of the child-in-need of assistance proceedings and was not informed of his statutory right to counsel, (B) the State did not prove the grounds for termination cited by the district court, and (C) the State failed to make reasonable efforts towards reunification.

## I. Mother

### A. Grounds for Termination

The mother has four children, born in 2003, 2004, 2006, and 2011. She contends the State failed to prove the two grounds for termination cited by the district court. We may affirm if we find clear and convincing evidence to support either ground. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

One of the grounds cited by the court was the absence of significant and meaningful contact. *See* Iowa Code § 232.116(1)(e) (2015).

> "[S]ignificant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain

communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

Iowa Code § 232.116(1)(e)(3).  Our de novo review of the record reveals the following facts pertaining to this ground.

The mother moved to Iowa in 2011 with three children and a fourth on the way.  In 2013, the State filed a child-in-need of assistance action based on the children's exposure to domestic violence in the mother's home.  The district court adjudicated the children in need of assistance.  Custody and placement of the children remained with the mother.

In February 2014, the children witnessed more domestic violence between the mother and her boyfriend.  The mother acknowledged the children were at risk from the violence as well as her untreated mental health conditions and agreed to have them placed in foster care.  She also agreed to admit herself voluntarily to an inpatient mental health unit.

In the ensuing months, the mother disengaged from services.  She failed to maintain contact with the department social worker or service providers charged with assisting her.  According to the department, she admitted "she has done virtually nothing that has been expected of her since [the previous] court hearing."  Six months after the children's placement in foster care, the department reported,

> [The mother] has not participated in any mental health counseling or medication management; she has met with the Crisis Intervention worker only a couple of times; she does not have independent housing and is living with a family friend. . . . [The mother] is not working and is dependent on his assistance. [The mother] has not sought substance abuse treatment, has not met with the [service] provider, has not had any visits with the children

since May [2014], and does not maintain any communication with this worker or the foster parents.

The department further reported:

> [The mother] is clearly still not in a position to provide for her children so continued out of home placement remains necessary. [The mother] must engage in services to work towards reunification if that remains her goal. She must establish and maintain positive mental health to be able to focus on obtaining housing and employment and to establish being an effective parent who is able to meet her children's' needs. She must address relationship issues and her overall need to be consistent. The children deserve the opportunity to remain children as well as the experience to live in a household environment that can consistently and safely meet their physical and emotional needs. They are aware that [the mother] has not been doing what is necessary and do not understand why. It is critical that [the mother] act on meeting the required [time] frames that must [be] met in order for reunification to be considered.

The mother did not heed these warnings and continued her course of disengagement for another three months.

She finally reengaged in recommended services four months before the termination hearing. The services included individual counseling, regular meetings with a service provider, and medication management with the assistance of a psychiatrist. The mother also obtained a substance abuse evaluation. The evaluator declined to recommend substance abuse services after concluding the mother did not appear to meet the criteria for a substance abuse diagnosis other than nicotine dependence. The evaluator recommended a continuation of mental health services.

The mother's psychiatric nurse practitioner confirmed the mother's participation in mental health services. She noted diagnoses of major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder. The

mother's efforts to obtain consistent treatment for her disorders, while commendable, came more than a year and a half after the department became involved with the family.

The mother also interacted with a domestic abuse advocate both individually and by phone. Nonetheless, she acknowledged seeing the individual who abused her just a few weeks before the termination hearing.

Throughout this period, the mother did not have any authorized contact with the children.[1] While she points to the department's refusal to allow contact, an issue we will address below, she concedes her inaction for a period of months was a driving cause of the department's decision to curtail contact. She also did not avail herself of the opportunity afforded by the department to discuss the children's welfare with the foster parents.

On this record, we conclude the State proved the mother failed to maintain significant and meaningful contact with the children.[2]

### B. Reasonable Efforts

The mother contends the department failed to make reasonable efforts toward reunification. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). She points to the department's denial of visits.[3]

---

[1] The mother had unauthorized contact with the oldest child on his birthday.

[2] An alternate statutory ground, requiring proof the children could not be returned to the mother's custody, was only pled with respect to the youngest child. *See* Iowa Code § 231.116(1)(f), (h). Because the mother admitted the children could not immediately be returned to her custody, the State argues we should affirm on this ground with respect to the youngest child. In light our affirmance under section 232.116(1)(e), we find it unnecessary to address this contention. We note, however, that this court has declined a similar invitation to affirm on an alternate pled-but-not-decided ground. *See In re A.R.*, No. 14-1204, 2015 WL 800075, at *9-10 (Iowa Ct. App. Feb. 25, 2015). *But see In re S.Z.*, No. 03-1237, 2003 WL 22346186 (Iowa Ct. App. Oct. 15, 2003).

The department concedes no visits were allowed for approximately one year. According to the department social worker assigned to the case, the mother "kind of disappeared" in mid-2014 and was not "consistent with things." In her view, "it was the decision that until we were able to know that she was more stable, we were going to cut them off, yes." The social worker also conceded the mother was disallowed telephone or e-mail contact with the children.

We are troubled by the department's wholesale denial of contact, even after the mother reengaged in services and furnished documentation of her participation. Nonetheless, the district court afforded the department unfettered discretion to determine the extent of the parents' contact with the children, stating "[t]he time, frequency, circumstances, location and duration of visits shall be as directed by the Department." Although the mother asked the department for visits, she failed to seek court intervention when the department declined and did not challenge the district court's broad grant of discretionary authority to the department. In light of these omissions and the mother's lengthy period of disengagement, we conclude the State's refusal to afford the mother contact with her children does not warrant reversal.

### C. Best Interests

The mother contends termination was not in the children's best interests. *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). We disagree. While the mother had a hand in raising children who department personnel characterized as

---

[3] Both parents moved to dismiss the termination petition for failure to comply with the reasonable efforts requirement. The district court denied the motion.

"marvelous" and "well-behaved," she regularly placed them in highly fraught situations. The children twice witnessed their mother get beaten, were forced to live with drug users, saw their possessions thrown into a ditch after the mother failed to pay rent, and routinely had to fend for themselves. The department was involved in their lives for almost two years. During most of the time, the mother did little to address the concerns precipitating the agency's involvement. Under these circumstances, we conclude termination was in the children's best interests.

### D. Bond

Finally, the mother contends the district court should not have terminated her parental rights, given the bond she shared with the children. Iowa Code § 232.116(3)(c). There is no question the mother and four children maintained an exceptionally close and loving relationship in the midst of their chaotic living situation. But there is also no question the mother compromised the children's health and safety even after she became aware she could lose them. Accordingly, we conclude termination was warranted despite the bond.

On our de novo review, we affirm the termination of the mother's parental rights to her four children.

### II. Father

### A. Notice

The father has two children, born in 2004 and 2006.[4] As a preliminary matter, the father contends he did not receive formal notice of the child-in-need-

---

[4] Although the father raised the oldest child, born in 2003, paternity testing revealed the child had a different biological father.

of-assistance petition. Notice is required by statute. *See* Iowa Code §§ 232.88 (stating State shall serve the child-in-need-of-assistance petition "in the same manner as for adjudicatory hearings in cases of juvenile delinquency as provided in section 232.37"), .37(1), (2), (4) (requiring service "upon the known parents . . . of a child" and specifying service shall be "made personally by the sheriff" or, if the court determines personal service is impracticable, by certified mail).

The father provided the department with current contact information on learning the agency had become involved with the family. A month after his telephone call, the State filed its child-in-need-of-assistance petition listing an Arizona address for the father. It is unclear from our record whether any effort was made to serve the father at this address.[5]

In time, the State represented it had "no accurate address" for the father and sought court permission to serve the father by publication of the notice in a local Iowa newspaper. The district court granted the request.

Although the father lived elsewhere, he eventually learned of the child-in-need-of-assistance action and participated in certain hearings. He also underwent a paternity test and engaged in telephone conversations with the children under the oversight of the department.

This court has declined to reverse proceedings where a parent "acquiesced to the jurisdiction of the court." *See In re J.F.*, 386 N.W.2d 149, 152 (Iowa Ct. App.1986). In light of this precedent, we conclude the father waived a

---

[5] The father asserts the State's service attempt was directed to a different address. Our voluminous electronic record does not appear to contain documentation of this service attempt.

challenge to the absence of personal or certified-mail service when he elected to participate in the child-in-need-of-assistance proceedings.

The father also contends he was deprived of his statutory right to counsel in the child-in-need-of-assistance proceedings. *See In re E.J.C.*, 731 N.W.2d 402, 404 (Iowa Ct. App. 2007) ("[I]nvoluntary termination proceedings conducted pursuant to Iowa Code chapter 232 'call for the furnishing of an attorney at public expense when requested by indigent parties.'" (citing *In re S.A.J.B.*, 679 N.W.2d 645, 647 (Iowa 2004))). The original papers included a notice of his right to counsel, but he asserts he never saw this notice. However, the father is presumed to have received notice of his right to counsel via service by publication. Under these circumstances, his failure to request counsel in the child-in-need-of-assistance proceedings amounts to a waiver of the right.[6] *See In re S.R.*, 548 N.W.2d 176, 180 (Iowa Ct. App. 1996) (finding inaction following notice amounted to waiver of right to counsel).

### B. Grounds for Termination

The district court terminated the father's parental rights pursuant to two statutory provisions. As with the mother, one of the grounds cited by the court was the absence of significant and meaningful contact. *See* Iowa Code § 232.116(1)(e).

As noted, the father lived in Arizona at all relevant times. After the mother moved to Iowa, he did not see the children until days before the termination

---

[6] The father requested and received appointed counsel in the termination proceedings.

hearing four years later.[7]  The father conceded the question of visiting the children came up at court hearings but he did not pursue it because he had "a family in Arizona" he "had to attend to."  The district court found the father's response evinced a lack of interest in his Iowa family.  We are not persuaded the father lacked an interest so much as finances and vacation time.  The fact remains, however, that the father had no personal contact with the children for a lengthy period of time.

We recognize he paid child support, telephoned the children multiple times a week, and obtained a positive home study of his Arizona residence in anticipation of his request to have the children transferred to his custody.  But he did not begin to take most of these steps until three years after the children moved.  In the interim, the close bond he shared with the children before the move diminished.  On our de novo review, we conclude the State satisfied its burden of proving the absence of significant and meaningful contact.

### C. Reasonable Efforts

The department has an obligation to make reasonable efforts toward reunification of parent and child.  *See In re C.B.*, 611 N.W.2d at 493.  The father contends the department failed to satisfy this obligation.  We disagree.

The department arranged for a home study and paternity testing, facilitated telephone contact with the children, and scheduled in-person visits when the father came to Iowa for the termination hearing.  Given the distance, we conclude the department satisfied its reasonable efforts mandate.

---

[7] There was some evidence the department would have restricted in-person visits had he requested them sooner.  Because the father did not request or attempt personal visits prior to the week of the termination hearing, the department's position was not tested.

On our de novo review, we affirm the termination of the father's parental rights to his two children.

**AFFIRMED ON BOTH APPEALS.**