# IN THE COURT OF APPEALS OF IOWA

No. 23-0828
Filed August 30, 2023

**IN THE INTEREST OF M.S.,**
**Minor Child,**

**D.S., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Joan M. Black, District Associate Judge.

The mother appeals the termination of her parental rights. **AFFIRMED.**

Matthew Shimanovsky, Iowa City, for appellant mother.

Brenna Bird, Attorney General, and Mary A. Triick (until withdrawal) and Tamara Knight, Assistant Attorneys General, for appellee State.

Sara Strain Linder of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Schumacher and Badding, JJ.

**GREER, Presiding Judge.**

The mother of a child born in July 2022 appeals the termination of her parental rights. Because we find the mother failed to preserve error on her right-to-counsel claim and, like the juvenile court found, additional time would not remove impediments to reunification, termination of the mother's parental rights is in the best interests of the child, the permissive exception under Iowa Code 232.116(3) (2023) does not prevent termination, and a guardianship was not in the child's best interests, we affirm the termination of the mother's parental rights.

**I. Background Facts and Proceedings.**

To start, M.S. was born several weeks premature and placed in the neonatal intensive care unit with serious health concerns.[1] From birth on, the child has never lived with her mother or father.[2] While she and her mother were still in the hospital following her premature birth, the mother began pulling large amounts of the child's hair out of her head—causing open sores—and picking at the scabs. Hospital staff requested that the mother stop harming the child and, on more than one occasion, reminded the mother to properly support the child's head while holding her and to console her when she was fussy and crying.

Because of these concerning behaviors, the child was removed from her mother's custody before the child's discharge from the hospital. The Iowa Department of Health and Human Services (the department), placed the child with a foster family. Due to complications from loss of oxygen and brain bleed during

---

[1] The child was diagnosed with moderate hypoxic ischemic encephalopathy (HIE) and suffers from seizures. The long-term prognosis is unknown.

[2] The father is uninvolved with M.S. and has never appeared in any proceeding addressing his parental rights, which were terminated. He does not appeal.

birth, the child requires additional medical care and attention beyond that of other children. To address her seizures, the child has had two electroencephalograms since birth. The child takes medication to prevent further seizures and eats mostly through a nasogastric tube. In early 2023, she was diagnosed with cerebral palsy and requires regular physical therapy appointments.

At an August 2022 hearing to review the removal of the child from the mother's custody, the mother requested to represent herself. The juvenile court granted her request but required her attorney, who was present, to remain as standby counsel throughout the hearing. At all subsequent proceedings, this same attorney continued to offer standby representation of the mother. The State began a child-in-need-of-assistance (CINA) proceeding that same month. The mother failed to appear at the CINA adjudication hearing,[3] and the juvenile court adjudicated M.S. as a CINA in September 2022. At supervised visits between the child and the mother, the mother struggled to develop basic infant care skills and was unable to feed, handle, bathe, and diaper the child appropriately. She also failed to arrive at supervised visits with appropriate supplies. The department social work case manager noted that the mother often did not attend fully supervised visits and often did not answer phone calls. The mother did not attend any of the child's medical appointments throughout the proceedings.

In February 2023, the State petitioned to terminate the mother's parental rights under Iowa Code section 232.116(1)(e) and (h). The juvenile court held a permanency hearing the same month. Throughout the time prior to and during the

---

[3] The mother was represented by counsel at this hearing; although she was not there, her counsel was present.

termination and permanency proceedings, the mother was often without permanent housing and employment. Although the mother spent some time living in a shelter, she also spent much of her time living on the street and sleeping in public places. At the time of the termination-of-parental-rights (TPR) trial, she had not yet finalized her housing. The mother worked at some jobs, but not consistently. Similarly, although the mother made some improvements in caring for the child, at times she was unable to follow the instructions of care professionals and to demonstrate basic parenting skills or bring diapers, wipes, and bottles to supervised visits. During her testimony the mother was unable to name any of the child's medical providers.

At the TPR trial in April, the mother had the benefit of the same standby counsel who was involved in the removal hearing. When she was asked at the TPR trial if the child could be returned to her that day, the mother said, "[T]oday wouldn't be a good day. I would be able to . . . have everything together solidly, I would probably say within the next three weeks." Later during the trial, the mother suggested that the child could live with the child's great aunt in Texas under a limited guardianship. In May, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(h).

## II. Standard of Review.

We review a termination of parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). "[O]ur fundamental concern" in review of TPR proceedings "is the child's best interests." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). We give careful consideration to the juvenile court's factual findings and in-person

observations, but we are not bound by them. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.,* 778 N.W.2d 33, 39 (Iowa 2010). We first consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.*

**III. Analysis.**

The juvenile court terminated the mother's parental rights to the child under Iowa Code section 232.116(1)(h), which requires proof that the child (1) is under three years old, (2) was adjudicated a CINA, (3) was removed from the physical custody of the parent for at least six of the last twelve months, and (4) cannot be returned to the parent's custody at the time of the termination trial. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (considering whether the child could be returned home "at the time of the termination hearing" when reviewing termination under section 232.116(1)(h)(4)). Now on appeal, the mother does not dispute the statutory grounds for termination. But she raises five errors she claims the juvenile court made: (1) allowing the mother to represent herself in the CINA proceeding, (2) not allowing additional time for reunification, (3) finding that termination was in the best interests of the child, (4) concluding that Iowa Code section 232.116(3) did not prevent termination of the mother's rights, and (5) failing to consider a limited guardianship as an alternative.

**A. Self-Representation in CINA Proceeding.**[4]

First, we consider the mother's claim that the juvenile court erred in allowing her to represent herself in the CINA proceeding. For us to properly consider a claim on appeal, the issue must have been both raised in and decided by the court below. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). The mother concedes that she did not raise this issue, either through her standby counsel at the CINA proceeding or through the same counsel in the TPR proceeding, nor did the juvenile court decide the issue in making its TPR determination. Because the mother failed to preserve error, we do not address her self-representation claim on appeal.

**B. Additional Time.**

Next, we evaluate the mother's contention that the juvenile court should have allowed her additional time to work toward reunification with the child. To grant an additional six months, the juvenile court must be able to "enumerate the

---

[4] Parents named in a chapter 232 CINA proceeding have a statutory right to counsel, including appointed counsel if they cannot afford their own. Iowa Code § 232.89(1). This right does not implicate the Sixth Amendment. *In re D.W.*, 385 N.W.2d 570, 579–80 (Iowa 1986); *see also In re M.D.*, 921 N.W.2d 229, 239 (Iowa 2018) (Christensen, C.J., concurring in part) (explaining that TPR proceedings are civil matters); *In re S.R.*, 554 N.W.2d 277, 279 (Iowa Ct. App. 1996) (describing the right as the "statutory right to counsel"). However, parents may waive the right to counsel through failing to request counsel or insisting on representing themselves. *See In re E.J.C.*, 731 N.W.2d 402, 404 (Iowa Ct. App. 2007) ("[I]nvoluntary termination proceedings conducted pursuant to Iowa Code chapter 232 'call for the furnishing of an attorney at public expense *when requested* by indigent parties.'" (emphasis added) (quoting *In re S.A.J.B.*, 679 N.W.2d 645, 647 (Iowa 2004))); *see In re S.R.*, 548 N.W.2d 176, 180 (Iowa Ct. App. 1996) (finding inaction following notice of CINA proceedings amounted to waiver of right to counsel by parent). Here, without reaching the merits of the claim, we note that the mother waived her right to counsel at the CINA proceeding by maintaining that she would represent herself, and, in any event, the mother retained the assistance of standby counsel throughout the CINA proceedings.

specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."  Iowa Code § 232.104(2)(b).  We will not ask a child to wait longer for permanency on a mere hope of a parent's improvement.  *See In re J.S.-M.*, No. 21-0927, 2021 WL 4304213, at *3 (Iowa Ct. App. Sept. 22, 2021) (affirming the juvenile court's refusal "to delay permanency 'on the mere hope' that the father would soon learn to become a self-sufficient parent"); *see also In re B.A.*, No. 11-1507, 2011 WL 5868301, at *2 (Iowa Ct. App. Nov. 23, 2011) (affirming termination when the father's "progress was not sufficient to show more than a mere hope that he might eventually be able to parent the child safely and consistently").

Instead, we consider, based on a parent's past behavior, the likelihood that the statutory requirements for additional time will be met.  *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) ("[W]e look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future." (citation omitted)); *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency.  Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citations omitted)); *see also In re P.L.*, 778 N.W.2d at 41 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child.").

Here, most concerning is the mother's inconsistent improvement at removing the impediments to her reunification with the child. Furthermore, we note that the child's significant medical challenges require intentional care and attention from the mother. Throughout the child's life, the mother has not demonstrated the skills necessary to accommodate the child's medical needs, nor has she shown any clear progression toward acquiring those skills, in particular after the child's diagnosis with cerebral palsy. During the TPR trial, the mother blurted out that she did not even know the child had been diagnosed with cerebral palsy. Additionally, the mother was not consistent with attending visits, often with no communication or indicating she had confused the dates. Lastly, stability is an issue as the mother has not demonstrated her ability to secure permanent housing or permanent employment. Instead, the mother only presented possibilities for both at the TPR trial with evidence that she had only started working at two jobs and had yet to follow through submitting a security deposit for an apartment. Based on the mother's past behavior, we cannot be assured she has tackled the challenges to stability that would allow reunification with the child in six months' time. Because we find that the mother has not shown specific changes that will make reunification possible, we decline to grant the mother additional time.

## C. Best Interests of the Child.

Now we look at what will serve the best interests of this child. In making a best-interests-of-the-child determination, courts "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see J.E.*, 723 N.W.2d at 801 (Cady, J.,

concurring specially) ("A child's safety and the need for a permanent home are now the primary concerns when determining a child's best interests.").

In the child's case, it is important that given her significant medical needs, she have a parent deeply involved in her medical and physical therapy appointments. The mother has not shown the stability needed to address the child's medical and safety needs. These concerns coupled with the other issues raised above bring us to the conclusion that the best placement for furthering the child's long-term growth and development is not with the mother. We agree with the juvenile court that the mother's inability to secure stable housing, stable employment, to comply with instructions from department professionals, to regularly attend supervised visits, and to appropriately care for the child throughout the months that the child has been removed from the mother's custody are concerning and point toward her best interests being served by termination of the mother's parental rights.

**D. Permissive Exception.**

We turn next to the permissive exception. Iowa Code offers an avenue to avoid termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The parent, in this case the mother, bears the burden of establishing the exception to termination. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (holding that "the parent resisting termination bears the burden to establish an exception to termination" and recognizing that it is up to the court's discretion whether to apply a factor). In attempting to meet that burden, a mention of a bond between a parent and child is

not enough unless the parent provides evidence that the bond overcomes the need for termination. *Id.*; *see D.W.,* 791 N.W.2d at 709 (explaining that "our consideration must center on whether the child will be disadvantaged by termination," not whether the parent loves the child).

Here, the mother has not met her burden of establishing that termination of her parental rights to the child would be detrimental to the child because of the closeness of their relationship. Although the juvenile court found that there was no doubt that the mother loves the child, severing the relationship does not create a detriment to the child. M.S. has never been in the mother's care; the mother did not consistently attend visitation; and the mother did not familiarize herself with M.S.'s medical condition and needs. We agree with the juvenile court; we decline to apply a permissive exception to prevent termination of the mother's rights.

**E. Limited Guardianship.**

Lastly, we consider the mother's argument that the district court should have granted a limited guardianship rather than terminate her parental rights. The mother stated throughout the proceedings that she wanted the child to be placed with the great aunt in Texas rather than with a foster family and that she could move there as well. Yet, the aunt insisted that she could care for the child, but not for the mother. Despite the wishes of a parent, "a guardianship is not a legally preferable alternative to termination." *A.S.,* 906 N.W.2d at 472. Furthermore, when the statutory requirements for termination are met, we may order either termination or a guardianship. *In re N.M.*, No. 17-0054, 2017 WL 1088119, at *3 (Iowa Ct. App. Mar. 22, 2017); *In re S.C.*, No. 15-1912, 2016 WL 903029, at *4 (Iowa Ct. App. Mar. 9, 2016); *In re K.B.*, No. 15-1685, 2016 WL 146707, *4 (Iowa

Ct. App. Jan. 13, 2016). At the same time, "[a]n appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997).

Here, importantly, there is nothing in the record to demonstrate that the mother's aunt in Texas had any interest in a limited guardianship with active participation by the mother. We are bound only to look to the best interests of the child, not whether any feasible alternative exists. In this case, the best interests of the child require a permanent placement, especially given that she is only thirteen months old. A guardianship is not warranted here.

**IV. Conclusion.**

The mother failed to preserve error on her claim about her right to counsel in the CINA proceedings. We agree with the juvenile court that additional time would not remove impediments to reunification, termination of the mother's parental rights is in M.S.'s best interests, the permissive exception under Iowa Code 232.116(3) does not outweigh the need for termination, and we, like the juvenile court, decline the request to order a limited guardianship with the mother's aunt as an alternative to termination. For these reasons, we affirm the decision of the juvenile court to terminate the mother's parental rights.

**AFFIRMED.**